SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paul T. Stavenjord, ) | No. CV 09-0354-PHX-DGC (LOA) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Corrections Corporation of America, et al.,) | |
| Defendants. ) | |

Plaintiff Paul T. Stavenjord, filed this civil rights action against employees of the Corrections Corporation of America (CCA), Red Rock Correctional Center (RRCC) in the Superior Court for the State of Alaska. (Doc. #21.) Defendants—CCA, Warden Bruno Stolc, and Deputy Warden Penny Hart—removed the action to the United States District Court for the District of Alaska, and on February 17, 2009, the Court for the District of Alaska transferred the action to this District. Defendants now move for summary judgment.[1] (Doc. #45.) The motion is ready for ruling. (Doc. ##54, 64, 66.) The Court will grant the motion as to the claim for injunctive relief and deny it in all other respects.

---

[1] The Court issued a Notice to Plaintiff pursuant to Rand v. Roland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*), advising him of his obligation to respond. (Doc. #53.) The Court also permitted Plaintiff to supplement his response. (Doc. #57.)

**I.      Procedural History and Summary of Motion**

In his Complaint, Plaintiff alleged that he is a Buddhist monk. On March 11, 2008 Hart posted a memorandum stating that as of April 18, 2008, the prison would be scaling back some religious practices, apparently including the burning of incense.[2] Plaintiff alleged that Defendants' conduct of banning outside services, including the ritual burning of incense, violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Doc. #21, Compl. ¶ 39.) He further alleged that Defendant violated the Fourteenth Amendment by banning the Buddhist practice of ritual incense while allowing Alaskan Natives to burn ritual incense at their sweat lodge gatherings. (Id. ¶ 40.) The Complaint seeks damages and injunctive relief. (Id. ¶¶ 42, 43.)

Defendants argue that (1) Plaintiff cannot demonstrate that Defendants placed a substantial burden on his religious exercise; (2) he cannot demonstrate that they violated his rights to equal protection; (3) he is not entitled to punitive damages; and (4) the claim for injunctive relief is moot. (Doc. #45.)

**II.     Legal Standards**

**A.      Summary Judgment**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in

---

[2] The Complaint also refers to "Hart's decision to eliminate the Buddhist service days and with it the practice of burning incense. . . ." (Doc. #21, Compl.)

contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-23.

When considering a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 248-49.

**B.  RLUIPA**

Under RLUIPA, a government may not impose a substantial burden on the religious activities of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). The burden need not concern a religious practice that is compelled by, or central to, a system of religious belief. Id. § 2000cc-5(7)(A). The "compelling

government interest" and "least restrictive means" test replaced the "legitimate penological interest" test of <u>Turner v. Safley</u>, 482 U.S. 78, 89-91 (1987). <u>Warsoldier v. Woodford</u>, 418 F.3d 989, 994 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-1(a)). Under its own terms, RLUIPA must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs." <u>Id.</u> at 995 (citing 42 U.S.C. § 2000cc-3(g)).

The inmate bears the burden of establishing prima facie that RLUIPA has been violated and that his religious exercise has been substantially burdened. <u>Warsoldier</u>, 418 F.3d at 994 (citing 42 U.S.C. § 2000cc-2(b)). The government then bears the burden of proving that the substantial burden on the inmate's religious practice both furthers a compelling governmental interest and is the least restrictive means of doing so. <u>Id.</u> at 995 (citing 42 U.S.C. §§ 2000cc-1(a), 2000cc-2(b)).

### C. Equal Protection

The Fourteenth Amendment Equal Protection Clause requires the State to treat all similarly situated people equally and entitles each prisoner to "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." <u>Shakur v. Schriro</u>, 514 F.3d 878, 891 (9th Cir. 2008) (internal citations omitted). To show a violation under the Equal Protection Clause, a plaintiff must demonstrate that the defendant acted with a discriminatory intent or purpose that was based on the plaintiff's membership in a protected class. <u>Serrano v. Francis</u>, 345 F.3d 1071, 1082 (9th Cir. 2003). He "'must set forth specific facts showing that there is a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." <u>Freeman v. Arpaio</u>, 125 F.3d 732, 737 (9th Cir. 1997), <u>abrogated on other grounds</u> by <u>Shakur</u>, 514 F.3d at 884-85. The Court must consider whether "the difference between the defendants' treatment of [Plaintiff] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" <u>Shakur</u>, 514 F.3d at 891 (citing <u>DeHart v. Horn</u>, 227 F.3d 47, 61 (3rd Cir. 2000)). A mere rational basis for disparate treatment of inmates of different religious faiths is not sufficient. <u>Id.</u>

**III. Motion for Summary Judgment**

**A. Parties' Contentions**

**1. Defendants**

In support of their motion, Defendants submit their Statement of Facts (Doc. #45 (DSOF)); Inmate Commitment Summary (id., Ex. 1); Request to Change Religious preference (id., Ex. 2); memorandum from Warden Stolc, dated March 11, 2008 (id., Ex. 3); affidavit of Warden Stolc (id., Ex. 4, Stolc Aff.); CCA documents entitled "Buddhist Worship Practices," "Asatru Worship Practices," and "Wicccan Worship Practices," (id., Ex. 5); Plaintiff's grievances and responses (id., Ex. 6); memorandum from Warden Stolc, dated November 10, 2008 (id., Ex. 7); and excerpts from Plaintiff's deposition of September 2, 2009 (id., Ex. 8.)

Defendants assert that on May 8, 2006, Plaintiff requested that his religious preference be changed from "omni-denominational monastic Zen Muslim" to "non-denominational Buddhist." (DSOF ¶ 2.) Before April 18, 2008, inmates of the Buddhist faith were permitted to conduct outside worship services, where they burned incense; however, due to security issues and concerns, Hart issued a memorandum to "concerned inmates" on March 11, 2008, advising that as of April 18, 2008, some of the religious practices would be scaled back, including outside worship and, consequently, the burning of incense. (DSOF ¶ 3.) Buddhists were not the only religious group to have their religious practices scaled back. The new restrictions were also imposed on the Asatru and Wiccans, whose outside ceremonies were also disallowed (including no burning of incense). (DSOF ¶ 4.) Plaintiff, "a self-proclaimed Buddhist," filed various grievances, complaining that these restrictions banned him from burning incense, which substantially burdened his religious exercise in violation of RLUIPA. (Doc. #45 at 2, DSOF ¶ 6.)

On October 14, 2008, pursuant to inmate requests, Warden Stolc met with a representative of the Buddhist religion to discuss the worship requirements and items necessary for the inmates to adhere to the tenets of their faith. As a result of that meeting, on November 10, 2008, Stolc, among other things, reinstated outside Buddhist worship,

including the burning of incense. (DSOF ¶ 7.) Thus, the total amount of time that Plaintiff was unable to burn incense was seven months. (Id.)

Defendants argue that Plaintiff has failed to demonstrate that the restriction of burning incense placed a substantial burden on the practice of his religion.[3] They assert that although Plaintiff prefers to burn incense, his inability to do so for seven months did not impose a "significantly great restriction or onus" upon his ability to practice his religion. Plaintiff testified that the practice of his religion, including worship, consists of prayer and meditation. Defendants argue that these activities could have been done inside his cell, without burning incense. (DSOF at ¶ 8.) Thus, Plaintiff's inability to burn incense did not rise to the level of a "substantial burden."

Defendants also argue that Plaintiff's Buddhist beliefs are not sincerely held. Although RLUIPA prevents courts from inquiring into whether a certain belief or practice is "central" to a prisoner's religious beliefs, it does not preclude an inquiry into the sincerity of those beliefs. (Doc. #45 at 4, citing Perkins v. Prisk, 2007 WL 1796238 (W.D. Mich 2007).) Defendants contend that Plaintiff proclaims to be a sincere Buddhist, but admits he could have practiced his religion and worshiped without burning incense and he chose not to and refused to worship, thereby neglecting that aspect of his religion for seven months. (DSOF ¶ 9.)

As to the Equal Protection claim, Defendants argue that Plaintiff was afforded reasonable opportunities to pursue his faith comparable to fellow prisoners. First, as evidenced by Plaintiff's own testimony, he was able to practice his religion and worship through prayer and meditation. (DSOF ¶ 8.) All other comparable religions were likewise banned from burning incense or fire, including Asatru and Wicca. (DSOF ¶ 4.) The only group whose outside practice of burning fire and incense was not banned was the Alaskan Natives, who were permitted to have sweat lodges based not on their "religion" but rather on

---

[3] As to a separate claim for banning outside services, Defendants argue that this claim exists only as a result of the claim regarding burning incense because burning incense is only permitted outside. As Plaintiff testified, had he been permitted to burn incense or use fire indoors, his claim regarding not being able to worship outdoors would not exist. (DSOF ¶ 6.)

their heritage as American Indians and pursuant to the terms and conditions contained in the contract between Alaska and CCA. (DSOF ¶ 5.)

Regarding relief, Defendants argue that Plaintiff's claim for injunctive relief is moot because he now is permitted to burn incense pursuant to a permanent policy change. (Doc. #45 at 5-6, DSOF ¶ 7.) As to damages, Defendants assert that Plaintiff is not seeking compensatory damages; he is seeking punitive damages. (Doc. #45 at 5, DSOF ¶ 10.) They argue that the Prisoner Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(e), provides that incarcerated prisoners cannot make a claim for mental or emotional injuries suffered while in custody without a prior showing of physical injury and that an inmate cannot make a claim for punitive damages premised on an alleged Fourteenth Amendment violation, where emotional or mental distress is suffered as a result of that violation. (Doc. #45, citing Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002).)

### 2.     **Plaintiff**

In support of his response (Doc. #54), Plaintiff submits his affidavit (Doc. #55); his Statement of Facts (Doc. #64 (PSOF)); and his Statement of Facts disputing DSOF (id.).

Plaintiff asserts that he is a Buddhist. He took preliminary vows on April 28, 2006, at Florence Correctional Center. He was accepted for rites of ordination on June 13, 2007, and he was ordained a monk at RRCC on June 22, 2008. (Doc. #55, Pl. Aff. ¶¶ 3, 6, 7.) He asserts that enlightenment is the ultimate goal of Buddhism and that it is his firmly held religious belief that meditation and ritual can lead to enlightenment. (Id. ¶¶ 8, 9.) He alleges that as a Buddhist he completed 14 months in the "Faith Pod" at Florence Correctional Center. (Id. ¶ 10.)

Plaintiff further asserts that in September 2007, Buddhist inmates at RRCC were granted a small portion of land to be used for outside services—specifically for the burning of incense, which cannot be done indoors due to fire hazard. (Doc. #54 at 11.) In his affidavit, Plaintiff asserts that he was one of two inmates instrumental in securing outside time for the Buddhist services, which would include burning incense, chanting, meditation and prayers. (Doc. #55, Pl. Aff. ¶ 12.) The land was also used by Wiccans, Asatru, and

those attending the sweat lodge. The Buddhist service was for one hour on Monday, Thursday, and Friday mornings. (Id.) On April 18, 2008, the religious exercise of group worship along with the formal ritual of incense burning was eliminated by the ban imposed by Defendants. (Doc. #64 ¶ 1.)

Plaintiff asserts that the Sangha is the spiritual community for Buddhists, and that to "take refuge in the Sangha" he has vowed to worship in a group setting, if at all possible, to support the Buddhist community, and to pass on the teachings and rituals to the Sangha. (Doc. #54 at 12.) Plaintiff also asserts that the burning of incense is a ritual of offering. (Id. at 11; Pl. Aff ¶ 14.) He contends that the Buddhist ritual of offering has a history dating back 2,500 years. The seven traditional offerings are: Water, Flowers, Incense, Light, Perfume, Food, and Music. Incense is used as offerings at formal meditations, worship, and other special events such as refuge ceremonies and ordinations. Incense is offered to Buddha, gods, saints, gurus, teachers, and others deserving the highest respect. (Id.) Perfume cannot be substituted for incense as both are listed as traditional offerings. (Pl. Aff. ¶ 15.)

Plaintiff alleges that when Defendants eliminated the established Buddhist service time, and with it the ritual use of incense, his vows to worship in accordance with his religious beliefs became impracticable. This was a substantial burden on his religious exercise. (Doc. #54 at 12.) Plaintiff asserts that he did not neglect his practice, but rather made choices to deal with a problem that was a major setback for him. (Pl. Aff. ¶ 16.) He also argues that Defendants are not qualified to question the sincerity of his beliefs as they have never inquired into his beliefs.[4] (Doc. #54 at 3.)

Plaintiff also asserts that when the Buddhist worship service was eliminated, the Alaskan Native sweat lodge was not. (Id. at 9.) Plaintiff compares the Buddhist ceremonies to the sweat lodge ceremonies, asserting that both are spiritual, religious in nature, and use

---

[4]Plaintiff also argues that, as required by RLUIPA, Defendants failed to prove that their ban of the Buddhist practice was in furtherance of a compelling governmental interest or that they actually considered and rejected less restrictive means before the ban. (E.g. Doc. #54 ¶¶ 2, 3.) The Court will not summarize or address these arguments because Defendants do not seek summary judgment on these grounds.

ritual items, including incense. (Id. at 9-10.) He alleges that the sweat lodge ceremony participants are not only Alaska Natives, "but Whites, Hispanics, Blacks, Asians and also Hawaii'an inmates." (Id. at 9.)

Plaintiff asserts that he is entitled to damages because the injury has already occurred—he missed 96 days of Buddhist worship service due to the ban. (Doc. #54 at 10, 14.) He also asserts that he is not claiming mental or emotional distress. (Id. at 14.) Plaintiff concedes that the outside worship and burning of incense was restored. (Id.) He does not address the issue of injunctive relief.

### 3. Reply

Defendants dispute Plaintiff's argument that there is no evidence of a compelling governmental interest for the ban. They assert that the record is undisputed that Buddhist outside worship services were initially removed due to legitimate security concerns, which is a compelling governmental interest. They argue that as a result of discussions with the inmates and a representative of the Buddhist religion, however, the concerns were alleviated and Buddhist outside worship was reinstated. They also contend that this inquiry is not necessary in this case, because Plaintiff fails to demonstrate that the removal of outside worship services placed a substantial burden on his religious exercise. (Doc. #66 at 2.)

Defendants argue that even if the burning of incense dates back over 2500 years, this does not mean that Plaintiff's inability to burn incense imposed a "significantly great restriction or onus" upon his ability to practice his religion. (Id. at 3.) Plaintiff attests that "enlightenment is the ultimate goal in Buddhism" and "that meditation and ritual can lead to enlightenment." They argue that Plaintiff has not provided any evidence that burning incense is the only way to enlightenment or the only way to meditate or engage in ritual. They assert that Plaintiff's deposition testimony demonstrates that he could have engaged in both meditation and ritual in his cell during the seven months that outside worship was banned, but, for unknown reasons, he chose not to do so. (Id.)

Defendants reassert their question as to Plaintiff's sincerity of belief, arguing that although Plaintiff acknowledges that not all items necessary for religious exercise will be

allowed and attests that he "adjusts" and that his "practice [will not] fall[] by the way-side," he nevertheless refused to practice for seven months. (Id. at 3-4; ref. Pl. Aff. ¶ 16.)

As to the equal protection claim, Defendants argue that Plaintiff confuses equal protection with race discrimination. (Id. at 4.) They assert that an equal protection claim as it relates to religious exercise arises when inmates are not afforded reasonable opportunities to pursue their faith comparable to the opportunities afforded fellow prisoners who adhere to conventional religious precepts. Plaintiff must show that Defendants intentionally acted in a discriminatory manner as it relates to religion, not race. Here, the record demonstrates that Plaintiff was able to practice his religion and worship through prayer and meditation. They reassert their claims that Alaskan Natives were permitted to burn incense outside due to their heritage and terms of the contract between Alaska and CCA and that Plaintiff has not shown otherwise. (Id.)

As to injunctive relief, Defendants note that Plaintiff admits that Buddhist worship service has been reinstated. (Id. at 5.) The case-or-controversy requirement demands that, throughout the litigation, the plaintiff must have suffered or be threatened with an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. (Id., citing Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990).) A suit for injunctive relief is moot when the conduct at issue is terminated. (Id., citing Demery v. Arpaio, 378 F.3d 1020, 1025-26 (9th Cir. 2004); Wiggins v. Rushen, 760 F.2d 1009 (9th Cir. 1985) (when a prisoner is no longer subjected to prison officials' allegedly unconstitutional activity, the complaint for injunctive relief become moot).)

Regarding damages, Defendants reassert their arguments under the PLRA. They also contend that Plaintiff has presented no admissible evidence demonstrating that Defendants' initial removal of the Buddhist outside worship was done as a result of anything other than security issues and concerns and that the sweat lodge was permitted to operate due to "heritage and contractual reasons." (Id. at 6.) They conclude that Plaintiff cannot establish that Defendants acted with evil motive or intent, or with reckless or callous indifference to his constitutional rights. (Id. at 7.)

### B. Analysis

#### 1. RLUIPA Claims

The Court will deny Defendants' motion as to the claim under RLUIPA. Plaintiff meets his initial burden, and Defendants present little evidence of a compelling interest and no evidence regarding consideration of a less restrictive measure before opting to ban the burning of incense. See Warsoldier, 418 F. 3d at 999.

The inmate bears the burden of establishing prima facie that RLUIPA has been violated and that his religious exercise has been substantially burdened. Id. at 994 (citing 42 U.S.C. § 2000cc-2(b)). As the Supreme Court has noted, "prison officials may appropriately question whether a prisoner's religiosity . . . is authentic." Cutter v. Wilkinson, 544 U.S. 709, 725 n. 13.

Plaintiff has presented evidence that his belief is sincerely held. The factual dispute on this issue precludes summary judgment. The only evidence offered by Defendants on this issue is that at his deposition, in response to the question "for seven months you did not participate in any type of Buddhist worship whatsoever, you let that go by the wayside for seven months," Plaintiff said "Yes." (Doc. #45, Ex. 8, Pl. Dep. 46:11-15.) But Plaintiff's other testimony on this issue is less clear. When asked if he neglected his religion for seven months, he stated "in that aspect" and "if I can't do what I need to do, then I mean without getting a write-up or going to Seg for it, then I can't do it." (Id. 46:18-24.)

Defendants' reliance on Perkins, 2007 WL 1796238 (W.D. Mich. 2007), is misplaced. In Perkins, the court held that the defendant was justified in his conclusion that the plaintiff inmate's religious beliefs were not sincere with respect to getting a kosher diet because he had a multifaceted religious background, was attending Roman Catholic services when he asked for a kosher diet, never adhered strictly to Judaism beliefs, and in fact did not seem to have a good grasp of the tenets of Judaism. Id., at *1-2. Here, Plaintiff describes, and Defendants do not dispute, his many activities and participation in his religious faith and community and the significance of burning incense in the exercise of his religion. In

addition, Defendants allowed Plaintiff to participate in the outdoor service before the ban was imposed and apparently allow him to participate now.

Defendants also argue that Plaintiff cannot demonstrate a substantial burden on his religious exercise. The Court must first identify the "religious exercise" allegedly impinged upon. Greene v. Solano County Jail, 513 F.3d 928, 987 (9th Cir. 2008). RLUIPA defines "religious exercise" as "*any* exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id., citing 42 U.S.C. § 2000cc-5(7)(A) (emphasis in Greene). In Greene, the inmate challenged a jail policy of prohibiting maximum-security inmates from participating in group worship. Id. at 984. The district court granted summary judgment, holding that an inability to participate in group worship would not substantially burden the inmate's ability to exercise his religion because he "was not required to act contrary to [his] religious beliefs" and "alternative means for exercising his religion remained available." Id. at 987.

The Ninth Circuit rejected a definition of "religious exercise" as the general practice of one's religion rather than a particular practice within one's religion. Id. It reasoned that in Cutter, the Supreme Court noted that, "the 'exercise of religion' often involves not only the belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine." Id., citing Cutter, 544 U.S. at 720. The court held that Greene's "religious exercise" was not the ability to practice his religion as a whole, but his ability to engage in group worship. Id. The Ninth Circuit also stated that it "had little difficulty in concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise." Id. at 988, citing with approval Meyer v. Teslik, 411 F. Supp. 2d 983, 989 (W.D. Wis. 2006) ("It is difficult to imagine a burden more substantial than banning an individual from engaging in a specific religious practice.").

Here, it is somewhat unclear from the record and arguments whether the ban on incense burning and outside services also resulted in a ban on group worship, but Plaintiff does not appear to raise a claim regarding a ban on group services. Nevertheless, under

Greene and Cutter, Plaintiff's "religious exercise" was the ritual burning of incense as an offering, not the practice of Buddhism as a whole. Defendants' argument that Plaintiff could meditate or pray in his cell thus is irrelevant under RLUIPA. Plaintiff could not burn incense in his cell. As the Ninth Circuit noted, the outright ban on this particular religious exercise was a substantial burden on the religious exercise. See Greene, 513 F. 3d at 988.

The Court will deny summary judgment to Defendants on the RLUIPA claim.

### 2. Equal Protection[5]

Defendants assert that there was no disparate treatment of different religious faiths because they banned burning of incense by the Asatrus and Wiccans as well as the Buddhists. According to Defendants, comparable religions were treated alike. As to Plaintiff's assertion that Alaskan Natives were still permitted to use the sweat lodge and burn grasses, Defendants claim that this was not based on religion but rather "heritage" and a contract provision between CCA and Alaska. (Doc. #45 at 5.) But in support of this argument, Defendants offer nothing but the conclusory statement of Stolc. (Doc. #45, Stolc Aff. ¶ 4.) And even Stolc's affidavit asserts that "*[a]ll religions, except Alaska Natives*, were no longer permitted to conduct outside ceremonies." (Id. ¶ 3.) (emphasis added.) What is more, Ninth Circuit cases that have addressed issues regarding the participation in sweat lodge ceremonies have treated sweat lodges as the practice of religion. See, e.g., Alvarez v. Hill, 518 F.3d 1152, 1155 (9th Cir. 2008); Navajo Nation v. U.S. Forest Service, 535 F.3d 1058, 1068 (9th Cir. 2008); U.S. v. Bruce, 394 F.3d 1215, 1226 (9th Cir. 2005); Henderson v. Terhune, 379 F.3d 709, 714 (9th Cir. 2004). The Court rejects Defendants' claim that all religions were treated comparably.

To prevail, then, Defendants must show that the difference between their treatment of Buddhists and their treatment of Alaskan Natives was reasonably related to legitimate penological interests. See Shakur, 514 F.3d at 891. Defendants utterly fail to do so. They provide no analysis under Turner, 482 U.S. at 89. Instead, Defendants offer an alleged

---

[5]The Court will treat Plaintiff's claim as one for denial of equal protection based on disparate treatment of different religious faiths, not race discrimination.

contract and claims about security concerns, but they fail to produce a copy of the contract and they make only vague arguments about security. Defendants never describe the nature of the security threat or why it did not exist in the sweat lodge, nor do they explain how their concerns were resolved to the point that outside worship could continue. The Court will deny Defendants' motion as to the equal protection claim.

### 3. Damages

The Court disagrees with Defendants' assertion that the PLRA and Oliver, 289 F.3d at 630, bar Plaintiff's damages claims. The PLRA provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. 1997e(e). This means that a prisoner may not obtain compensatory damages for mental or emotional injury if the "physical injury" is *de minimis*. Oliver, 289 F.3d at 629. In Oliver, the court noted that the inmates's complaint sought punitive damages and was "consistent with a claim for nominal damages even though they are not expressly requested." Id. at 630, citing Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se complaints may be construed liberally). The court held that "to the extent that [the inmate] has actionable claims for compensatory, nominal or punitive damages—premised on violations of his Fourteenth Amendment rights, and not on any alleged mental or emotional injuries—we conclude the claims are not barred by § 1997e(e)." Id.; see also Canell v. Lightner, 143 F.3d 1210 (9th Cir. 1998) (physical-injury requirement of 1997e(e) does not apply to deprivation of First Amendment rights).

Defendants offer no authority to suggest that, as to the PLRA, the Ninth Circuit would treat Plaintiff's RLUIPA claims different from his constitutional claims. Plaintiff in fact asserts that his injury was the loss of his ability to practice an aspect of his religion. Summary judgment on the basis of the PLRA will be denied.

The Court also declines to dismiss the claim for punitive damages. Defendants contend that punitive damages are not warranted because the restriction on Plaintiff's worship was based on security concerns, and Alaskan Natives were allowed to continue

outside services because they were traditional not religious practices and Defendants' contract with Alaska required that the services continue. As noted above, Defendants fail to present probative evidence in support of these contentions.

Punitive damages are awarded in the jury's discretion. Smith v. Wade, 461 U.S. 30, 54 (1983). The jury must find either that the defendant acted with an evil motive or demonstrated reckless indifference to the plaintiff's constitutional rights. Id. at 56. The Court cannot determine, on this record, that Plaintiff is not entitled to punitive damages under the recklessness standard.

### 4. Injunctive Relief

The Court will grant the motion as to Defendants' request for summary judgment on injunctive relief. Defendants have restored the outdoor services to Buddhists—and therefore to Plaintiff—and the burning of incense is no longer banned. The evidence shows that the services were restored more than a year ago, and Plaintiff does not allege any further problems with this issue. (Doc. #45, Ex. 7.) The claim for injunctive relief is moot. See Wiggins, 760 F. 2d at 1101.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. #45).

(2) Defendants' Motion for Summary Judgment (Doc. #45) is **granted as to the claim for injunctive relief** and **denied in all other respects.**

(3) Before holding a final pretrial conference in this case, the Court will require the parties to participate in a settlement conference with a United States Magistrate Judge.

(a) Magistrate Judge David K. Duncan is designated to hold the settlement conference. The conference shall be completed within 60 days of the date of this order.

(b) The Court's docket suggests that Plaintiff is currently housed in Alaska. The Court will leave to the Magistrate Judge the decision of how best to conduct the settlement conference, although video conference may be appropriate.

(c) Upon completion of the settlement conference, the parties shall file a status report stating whether the case has been resolved. If it has not, the Court will schedule a final pretrial conference. The Court will set a firm trial date at the final pretrial conference.

DATED this 15th day of March, 2010.

_David G. Campbell_
David G. Campbell
United States District Judge